IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARY MILLER and WESTERN NATIONAL
TRUST COMPANY, Co-Personal
Representatives of the Estate of DON PETER        OPINION and ORDER
MILLER, Deceased, and JANE E. MILLER,
                                                                                           12-cv-516-jdp

      Plaintiffs,
  v.

AMERICAN ART CLAY CO INC., et al.,

      Defendants.

---

Don Peter Miller was an artist and art professor who worked in various media over a long career. From the late 1970s until his retirement in 1996, Miller worked in clay, primarily in a studio in the basement of his home. It was often dusty work, particularly when Miller mixed dry clay or when he drilled and sanded his pieces after they had been fired. Miller was diagnosed with mesothelioma, a fatal asbestos-caused illness, in April 2012.

Miller and his wife, Jane, sued six defendants alleging that they made asbestos-containing products to which Miller had been exposed either in his work places, his home studio, or in making repairs to his home. A seventh defendant, not at issue in this opinion, is an insurance company alleged to have abetted the concealment of the risks of asbestos. After Miller died in October, 2012, his daughter, Cary, and Western National Trust Company substituted for Miller in this case as the representatives of his estate.

Four of the manufacturer defendants have been dismissed from this suit. Two remain: American Art Clay Co., Inc. (AMACO), the maker of Miller's preferred clay, and R. T. Vanderbilt Co., Inc. (Vanderbilt), which supplied talc, an ingredient in some of AMACO's clay

formulations. Plaintiffs allege that Vanderbilt's talc contained asbestos, and that Miller used an AMACO clay formulation, White Clay No. 25, that contained Vanderbilt talc.

Before the court are motions for summary judgment by AMACO and Vanderbilt, which we will refer to collectively as the defendants in this opinion (even though the insurance company remains in the case and did not move for summary judgment). Defendants contend that plaintiffs cannot meet their burden to prove that Miller used White Clay No. 25 rather than some other AMACO clay that did not contain asbestos. The court agrees. Miller was not deposed before he died, and the only evidence plaintiffs have to show which clay Miller used is the testimony of his wife and daughter, whose significant recollection is that Miller used an AMACO clay that was white or light gray. Because this description matches more than one AMACO clay, including ones that do not contain asbestos, the jury would have would have to speculate to find that AMACO and Vanderbilt were the source of the asbestos that caused Miller's mesothelioma. The court will therefore grant defendants' motions for summary judgment.

## UNDISPUTED FACTS

For the purposes of summary judgment, the court finds that the following facts are material and undisputed.

Miller was a professor of art at the University of Wisconsin—River Falls, where he taught calligraphy, print making, and painting. Miller's own artwork was in various media, including painting, drawing, and digital media. From 1978 to the early 1990s, Miller worked extensively with ceramics in a studio in the basement of his home. Miller retired from teaching in 1996. Miller also did repairs and renovations on his home, in the course of which he was exposed to asbestos-containing products including floor tile and caulk.

Miller's preferred brand of clay was AMACO, which he purchased in pre-mixed "moist" or "wet" form, and as a dry powder, which he mixed with water in a pail. When he mixed the dry powder, dust would billow up around him. Miller was also exposed to clay dust when he cleaned his studio, and when he drilled and sanded his pieces after they had been fired. Plaintiffs have no records to establish which clay Miller used, and Miller was not deposed before he died. Jane and Cary do not know which AMACO clay Miller used, but they remember that he used clay that was white or light gray in dry form or when fired and that was somewhat darker in moist form.

During the time Miller did his ceramic work, AMACO made numerous varieties of clay, in a range of colors and for different applications. AMACO catalogs from the time described several of its clays as "white clays," which in dry form and after firing were white, off-white, or very light gray. In moist form, the white clays appeared darker. Two AMACO white clays contained talc, an ingredient that improved the clay's resistance to cracking when heated. One was called White Talc Clay No. 25, and later White Art Clay No. 25 (the court will refer to this variety as White Clay No. 25). The other talc-containing clay was Casting Formula No. 15, which was used to create pieces shaped in a mold. Miller did not use the casting technique; he formed his pieces by hand. Thus, Miller did not use Casting Formula No. 15. For the purposes of summary judgment, the record evidence is that White Clay No. 25 contained Vanderbilt talc, and that Vanderbilt talc contained asbestos. (These are facts that plaintiffs would have to prove, but at summary judgment all that matters is that they have some evidence to support them.)

Miller was diagnosed with mesothelioma in April 2012 and died in October 2012. Mesothelioma is a cancer caused, almost invariably, by asbestos exposure. Mesothelioma has a very long latency period, with diagnosis coming 10 to 40 years after exposure. Although

extensive exposure increases the likelihood of mesothelioma, even very brief and low exposures to asbestos can cause mesothelioma.

The court has jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000.

## OPINION

Because the court's jurisdiction is based on the diversity of the parties under 28 U.S.C. § 1332, it applies the substantive law of Wisconsin. *See Westlund v. Werner Co.*, 971 F. Supp. 1277, 1280 (W.D. Wis. 1997) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Each of plaintiffs' claims require them to prove that defendants caused Miller's illness. Under Wisconsin law, to prove causation, a plaintiff needs to show that the defendant's action was a "substantial factor" in causing plaintiff's injury. *Zielinski v. A.P. Green Indus., Inc.*, 2003 WI App 85, ¶ 16, 263 Wis. 2d 294, 661 N.W.2d 491. A substantial factor need not be the most immediate or the most important cause of an injury. *Horak v. Building Services Industrial Sales Co.*, 2008 WI App 56, ¶ 15, 309 Wis. 2d 188, 750 N.W.2d 512. A defendant's action is a substantial factor, and thus a cause, so long as it contributed to the injury. *Zielinski*, 2003 WI App 85, ¶ 16. Causation is a question of fact for the jury, to be determined from the totality of the circumstances presented. *Id.* at ¶ 18.

Summary judgment is appropriate if AMACO and Vanderbilt "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to plaintiffs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Id.* at 248.

4

When causation is challenged on summary judgment, as it is here, plaintiffs must adduce evidence which, if presented to the jury, would allow the jury to make a reasoned finding that defendants' products were a cause of Miller's injury. *Zielinski*, 2003 WI App 85, ¶ 16. If plaintiffs' evidence is not sufficient to permit a reasoned choice between alternative findings, one leading to liability and the other not, then any such finding would be merely speculation. Therefore, the question the court must answer is whether plaintiffs have evidence sufficient to allow a jury to make a reasoned finding that Miller's mesothelioma was caused, at least in part, by AMACO clay and Vanderbilt talc. Plaintiffs' sole theory of liability against AMACO and Vanderbilt is that Miller used White Clay No. 25, an AMACO clay that (for the purposes of summary judgment) contained Vanderbilt talc, which contained asbestos.

The complaint makes five claims against AMACO and Vanderbilt—negligence, failure to warn, willful and wanton conduct, breach of implied warranty, and false representation/fraud. All claims are based on the allegation that defendants manufactured or placed products containing asbestos into the steam of commerce. Defendants seek summary judgment on all claims on the ground that plaintiffs cannot prove that Miller used White Clay No. 25, as opposed to another AMACO white clay that did not contain asbestos. Each of plaintiffs' claims would require the showing that AMACO and Vanderbilt caused Miller's illness, and thus if plaintiffs cannot show that Miller used White Clay No. 25, all plaintiffs' claims will fail.

**A. Plaintiffs' claims of breach of implied warranty and false representation/fraud**

Plaintiffs do not oppose AMACO's motion for summary judgment on their claims of breach of implied warranty and false representation/fraud. Dkt. 127, at 2. Accordingly, AMACO's motion will be granted as unopposed as to these two claims.

The parties do not address plaintiffs' breach of implied warranty and false representation/fraud claims against Vanderbilt. Because it is not apparent whether plaintiffs'

5

intent was to consent to the dismissal of these claims against Vanderbilt, as they did in their response to AMACO's motion, the court rules on them here.

Without privity of contract between Vanderbilt and Miller, plaintiffs' breach of implied warranty claim against Vanderbilt fails. *See Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 801 N.W.2d 781, 816 (Wis. Ct. App 2011) (citation omitted) ("Wisconsin has always required privity of contract in an action for a breach of implied warranty."). The record contains no evidence of contractual privity between Vanderbilt and Miller.

Plaintiffs' false representation/fraud claim against Vanderbilt cannot withstand summary judgment because its viability requires detriment or damage to Miller as a result of Vanderbilt's false representation of fact. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 13, 270 Wis. 2d 146, 677 N.W.2d 233. The record contains no support for plaintiffs' allegations that Miller relied on Vanderbilt's factual misrepresentation to his detriment.

Accordingly, the court will grant Vanderbilt's motion for summary judgment as to plaintiffs' claims of breach of implied warranty and false representation/fraud.

**B. Plaintiffs do not have evidence sufficient to show that Miller used White Clay No. 25.**

Following the principles set out in *Zielinski*, the court evaluates plaintiffs' evidence of causation in light of the totality of the circumstances.

Miller's mesothelioma is itself sufficient to show that he was exposed to asbestos. Although plaintiffs' medical expert suggests that five percent of mesothelioma cases may have causes other than asbestos exposure, defendants do not suggest that Miller's mesothelioma is one of the rare idiopathic cases. Miller was exposed to asbestos from sources other than AMACO clay, including from the floor tiles and caulk he worked with while renovating his home. Although the record does not establish the extent of that exposure, plaintiffs' medical

expert states that "very brief and/or low exposures to asbestos were sufficient to cause mesothelioma." Dkt. 142, at 23. Thus, under these circumstances, the fact that Miller contracted an asbestos-caused illness after exposure to AMACO clay dust is not by itself sufficient to establish that his mesothelioma was caused by AMACO and Vanderbilt's products.

Plaintiffs do not have Miller's testimony concerning which clay he used. Plaintiffs also have no documentary evidence, such as receipts, to establish which clay Miller used. This is not surprising, because Miller apparently stopped using the clay in the early 1990s, and he was diagnosed with mesothelioma approximately 20 years later. But it is somewhat more surprising that plaintiffs have adduced no physical evidence to show which clay he used, such as specimens of Miller's ceramic work, which might be subject to testing.

In the absence of documentary and tangible evidence, plaintiffs rely exclusively on two categories of evidence: the testimony of Miller's widow, Jane, and daughter, Cary, concerning their memories of Miller's work habits and materials; and AMACO catalogs that describe the appearance of various AMACO clay formulations and the applications for which those formulations were suitable. Plaintiffs contend that Jane's and Cary's descriptions of the color of the clay match White Clay No. 25, and that based on the recommended applications of the various AMACO clays, the jury could reasonably infer that Miller used White Clay No. 25.

The testimony of Jane and Cary is, as defendants argue, questionable because it is based on their limited opportunities to observe Miller working and because their memories have been dimmed by time. Miller did his work in the early mornings, when Jane and Cary were typically sleeping, and Cary was very young when Miller worked with clay. But questions concerning the credibility of Jane's and Cary's testimonies are exclusively within the purview of the jury. *U.S. v. Harbour*, 809 F.2d 384, 388 (7th Cir. 1987). Doubts about Jane's and Cary's credibility provide no basis for granting summary judgment for the defendants.

Defendants do not dispute that AMACO clay was Miller's favorite, and that he "stuck with it." Jane testified that Miller may have purchased other brands of clay as well, but given Wisconsin's substantial factor approach to causation, it would not matter for present purposes if Miller had also been exposed to asbestos in other clays. Jane's and Cary's testimonies are sufficient to show that Miller was exposed to substantial amounts of dust from AMACO clay. But Jane's and Cary's testimonies are not enough to establish that Miller used White Clay No. 25.

Jane testified that the dry clay was "off white and light gray," and "almost like flour, but it was a little bit more gray." Jane described the wet clay as "just a bit different color" and "light gray." Cary testified that her father used both red and white clay. She did not recall seeing him use dry clay. She offered conflicting testimony about the color of the wet white clay as both "a big gray block, dark gray" and "kind of a—like a light gray when it was wet." Cary testified that the white clay turned from gray to white when the clay dried. Jane and Cary offered testimony about the packaging of AMACO clay, which was consistent with AMACO packaging, but too general to help specify which specific AMACO clay Miller used. Neither Jane nor Cary recalled any writing on the packaging besides the name "AMACO."

Jane testified that, before firing his pieces, Miller shaped them with his hands and, to a lesser extent, with hand tools. After firing, he sanded and drilled the pieces. But neither Jane nor Cary knew technical details about Miller's ceramic work, such as the time and temperature at which the clay was fired. Had Jane or Cary knew these technical details, they might have further narrowed the number of clays that Miller might have used.

Plaintiffs are correct that the testimony of Jane and Cary concerning the clay Miller used is consistent with White Clay No. 25. But their testimony is also consistent with a number of other AMACO clays. Defendants cite ten clays in AMACO catalogs from 1978 to 1990 that

they contend are gray in a raw state but fire to a near white color. However, some of these clays are described as "off white" or "buff" rather than gray. Although the court is skeptical that Jane and Cary can reliably distinguish between fine gradations of color on the basis of their 20-year-old memories, the court will nevertheless consider their testimony adequate to rule out such clays as AMACO Buff Firing Clay No. 46, which fires to a buff color. Dkt. 117-4. The court will also rule out AMACO Raku Firing Clay No. 45, because Cary's testimony establishes that Miller made only minimal use of the raku technique. But even excluding the buff color clays, and those suited for techniques that Miller did not regularly use, there remain several AMACO clays that fit Jane's and Cary's testimonies that did not contain talc or asbestos.

As defendants point out, the testimony closely matches AMACO Porcelain Clay No. 65: "The unfired color of this clay is light gray, but in bisque it is white." That clay "is recommended for wheel throwing, sculpture, and all other methods of hand building." Dkt. 145, at 31-33. Plaintiffs do not dispute that Porcelain Clay No. 65 matches Jane's and Cary's testimonies. But they contend that:

> [T]he description also says that the finished piece as white with "the translucency of fine porcelain." Doc. 117-4 at 8. This does not match the description of Mr. Miller's work.

Dkt. 145, at 33. But plaintiffs' attempt to dispute facts pertaining to Porcelain Clay No. 65 fails because they do not cite any evidence for their contention that "the translucency of fine porcelain" does not match Miller's work. On summary judgment, a party cannot raise a genuine dispute of fact merely by disagreeing with the other side's proposed fact. A genuine dispute requires evidentiary support, and plaintiffs have not pointed out any description of Miller's work in the record that would rule out his use of Porcelain Clay No. 65. From the record before the court, it is equally likely that Miller used Porcelain Clay No. 65 as it is that he used White Clay No. 25.

Porcelain Clay No. 65 would be enough to doom plaintiffs' claims on summary judgment, but defendants make the same showing with several clays that AMACO sold as "White Clay": White Sculpture Clay No. 27, White Throwing Porcelain No. 68, and Versa Clay No. 20. Plaintiffs have not shown that any of these white clays are inconsistent with Jane's and Cary's descriptions of the color of Miller's clay, or that they are incompatible with Miller's working methods.

Based on the summary judgment record, the jury would be left with no way to make a reasoned finding that Miller used White Clay No. 25 rather than one of AMACO's other white clays that did not contain talc and asbestos. Accordingly, this is a case where the choice between liability and non-liability are, at best, evenly balanced. In such a case, the record establishes only a mere possibility of causation, and the jury could find causation only by speculation and conjecture. *Zielinski*, 2003 WI App 85, ¶ 16. "[W]hen the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id*. (citing *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 267 N.W.2d 652, 654 (Wis. 1978)).

In reaching the conclusion that the record evidence establishes only the mere possibility of causation, the court follows the directive in *Zielinski* to decide the case on its unique facts, considering the totality of the circumstances. *Zielinski*, 2003 WI App 85, ¶ 18. Accordingly, it has not been greatly helpful to try to analogize the facts of this case to other asbestos cases in which summary judgment has been granted or denied. However, the court notes that among the cases cited by the parties, this case is closest to *Risse v. Building Services Industrial Supply, Inc.*, 2012 WI App 97, 344 Wis. 2d 124, 2012 WL 2545394 (Jul. 3, 2012).[1] In that case, the court of appeals affirmed summary judgment for the defendant, in significant part because the

---

[1] This is an unpublished opinion that the parties appropriately cited for persuasive value under the Wisconsin Rules of Appellate Procedure, Rule 809.23(3)(b).

defendant had supplied both asbestos-containing and asbestos-free insulation, and the evidence was not sufficient to show that the defendant provided asbestos-containing insulation to the worksites where the plaintiff had worked.

Causation is a required element of plaintiffs' claims of negligence and failure to warn. *See, e.g.*, *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 23, 291 Wis.2d 283, 717 N.W.2d 17 (2006) (citations omitted) (negligence); *Maynard v. Abbott Laboratories*, 2013 WL 695817, at *3 (E.D. Wis. Feb. 26, 2013) (citation omitted) (failure to warn). Because plaintiffs lack sufficient evidence to show that defendants' products were a substantial factor contributing to Miller's mesothelioma, plaintiffs' claims of negligence and failure to warn must be dismissed on summary judgment.

Plaintiffs' claim that defendants' conduct was willful and wanton, thus entitling plaintiffs to punitive damages, must also be dismissed. In Wisconsin, the plaintiff may receive punitive damages if evidence is submitted that the defendant acted maliciously or in an intentional disregard of the plaintiff's rights. Wis. Stat. § 895.043. The statute "heightened the state of mind required of a defendant from a 'wanton, willful and reckless' disregard for rights of another to an 'intentional disregard' for rights of another." *Berner Cheese Corp. v. Krug*, 2008 WI 95, ¶ 63, 312 Wis. 2d 251, 752 N.W.2d 800 (2008) (citing *Strenke v. Hogner*, 2005 WI 25, ¶ 19, 279 Wis. 2d 52, 694 N.W.2d 296 (2005)). To warrant imposition of punitive damages, defendants' conduct must have been deliberate and malicious. *Henrikson v. Strapon*, 2008 WI App 145, ¶¶ 14-16, 314 Wis. 2d 225, 758 N.W.2d 205 (2008). Although the court is skeptical that plaintiffs could make this showing, the court need not reach the issue, because punitive damages cannot be awarded for conduct that did not cause Miller's injury. *Henrikson*, 2008 WI App 145, ¶ 19 (citing *Kehl v. Economy Fire & Cas. Co.*, 147 Wis. 2d 531, 433 N.W.2d 279, 280 (Wis. Ct. App. 1988) ("Juries are not given license to roam the caverns of their consciences to punish

conduct they deem despicable unless a plaintiff can prove that he or she has suffered some actual damage as a result of the conduct."). Thus, because plaintiffs cannot prove causation, their claim based on defendants' willful and wanton conduct must also be dismissed on summary judgment.

With this opinion and order, plaintiffs' claims against all the manufacturing defendants are resolved. But the claim against defendant Metropolitan Life Insurance Company is not. Accordingly, the court asks that counsel for plaintiffs and for Metropolitan Life Insurance Company promptly submit a brief report on the status of any remaining claims against Metropolitan Life Insurance Company, so that the parties and the court can prepare for trial if necessary.

## ORDER

IT IS ORDERED that:

1) Defendant Vanderbilt's motion for summary judgment, Dkt. 97, is GRANTED;

2) Defendant AMACO's motion for summary judgment, Dkt. 113, is GRANTED;

3) Counsel for plaintiffs and for Metropolitan Life Insurance Company must submit a brief report on the status of the claims against Metropolitan Life Insurance Company by July 7, 2014.

Entered this 23rd day of June, 2014.

BY THE COURT:

/s/
JAMES D. PETERSON
District Judge